We move to the sixth case this morning, Martin v. Martinez. Good morning, or actually good afternoon. My name is Stephen Richards, and I represent the plaintiff appellate in this case, Gerard Martin. When I was thinking about this case last night, I was thinking there's actually two ways to frame the issue, which were not exactly the questions presented in my brief. One way to frame the issue is whether this court's decision in Kerr v. City of Chicago should be overruled, because it would have to be overruled if the appellees prevail. The second question, or the second way of viewing this question, is whether a person who is illegally seized and stopped cannot get damages which result from that seizure and stop, simply because the police find contraband and from that develop what they view as probable cause to detain him further. So the basic issue here is damages and compensation. This is a causation inquiry. And as your honors are aware, the Supreme Court in Kerry v. Pippis said that civil rights cases are basically tort cases. They're tort cases about federal rights. And when you adjudicate a tort case involving federal rights, you use common sense and the common law and all of our jurisprudence for hundreds of years as to how to assess causation. Well, how do you assess causation? How do you assess damages? Traditionally... found probable cause for his arrest, doesn't it? And isn't that alone enough to defeat his claim for damages from the detention? No, your honor, it does not, because the jury, number one, the jury did find that he had been illegally stopped. And everything else flowed from the illegal stop. Had he not been illegally stopped, there would have been no probable cause developed, because he would never have been stopped. He would have been just driving away. Further, the jury was instructed, consistent with the appellee's win on partial summary judgment, that they could not consider any damages after probable cause or contraband or whatever had been discovered. And in fact, the discovery of the lack of a driver's license and the discovery of the gun were almost immediate. In fact, immediate in the police's view, because their contention was as soon as they stopped him and inquired, they saw a gun. Well, you don't know how the existence of probable cause, however obtained, constitutes a complete defense to a malicious prosecution claim. That same rationale would apply to provide a complete defense to a claim for unlawful arrest, wouldn't it? No, it would not. Because as the Supreme Court said in Carey v. Piffus, the you look to State law and you look to analogous torts sometimes, but there is a separate constitutional claim that is protected by the Civil Rights Act. Now, in the case of malicious prosecution, and I'm glad you bring that up, you need an acquittal to even start a malicious prosecution claim. You need to have the case dismissed on grounds indicative of innocence. That obviously has nothing to do with this instance in which there's a Fourth Amendment claim, which was vindicated in a motion suppressed, which I might add was litigated by Mr. Martin Pro Se, and he won. So I don't think the malicious prosecution analogy applies whatsoever. Moreover, you have to look at, I think the inquiry involves, is this Fourth Amendment injury? And that's the phrase which the district court did not use, but the appellees used. They say it's not a Fourth Amendment injury. We disagree. His Fourth Amendment rights were violated. The jury found that. The only question is whether, as a consequence of that violation, he should get damages with things that happened as a result under a common law tort principles causation as determined by a jury, which is precisely the approach urged by the courts or used by the courts in Burunda and Train. And that is the proper approach. It's simply a causation question. Now, the underlying theme, I think, of both the appellee's argument and the district court's argument is this. I think the theme is people who violate the law or possess contraband shouldn't get damages after that is discovered, even if it's discovered illegally. And all I can say about that is we disagree. As the court said in Train, and actually probably it's a district court in a different circuit, but it's the best analysis of this issue in our view. What they said is we think when the framers enacted the Fourth Amendment, they were concerned with the evil of searches, illegal searches, illegal seizures. And they did not distinguish between seizures and searches of people who may have been committing crimes or possessed contraband. After all, the Fourth Amendment was motivated by people who, for example, John Hancock and others, were engaged in smuggling goods in violation of British regulations and were dismayed when general warrants were issued that their vehicles and vessels could be searched and contraband could be seized. They determined that these things only happen not by government fiat, but by process of law. The jury found that the police, and found on good reasons, by the way, that the police officers in this case made up a reason for a stop. They falsely claimed, actually way after the fact and not in their police reports, that they saw the car slow down and the brake lights not go on. And that was an explanation that was made up after their first explanation about violating municipal ordinance was shot down because it wasn't consistent with the timing. This was a Fourth Amendment violation. Maybe small in the context of other Fourth Amendment violations, but very important to Mr. Martin because, as a result, he was held for 58 days. Did he ever get his car back? No, I don't believe he did get his car back. I also say, just for the record, although this is not really integral to any of the issues, that he was also an auto dealer. And we had some discussion when we were doing discovery about whether he would get damages for the loss of his income for the auto dealership during the 58 days. So he was deprived of liberty. We've also mentioned the Johnson case, which, as it happens, is my case and recently decided and I think is analogous, although it's a Fifth Amendment violation. Let me just last address, since I think these issues are well briefed on both sides and you may not need more input from me, the argument made by the district court judge, who I realize is now one of your colleagues, that this case of care, which is dispositive, on point, should be overlooked because it is now almost 29 years old. I think that argument is rejected. That argument would also support the overruling of Marbury v. Madison, which is 219 years old. This is a very important issue, obviously. We ask that you strongly consider our arguments in the briefs and that you rule that the case should be remanded for a new hearing on damages where Sherrod Martin has a chance to prove that his incarceration was the result of the illegal stop of his vehicle. Thank you. Thank you, counsel. May it please the court. We have always pronounced the case that they cite in their brief and that my opponent has relied on today as Kerr, so I was a little confused when I first heard it, but we addressed that case at length in our brief and explained that it is completely an opposite to this case for the reasons that we explained in our brief. In light of its verdict in this case, in this Section 1983 action, the jury necessarily found that the police officers both stopped Martin's vehicle unlawfully and a few minutes later arrested him lawfully upon learning that he was not carrying a driver's license or driving on a traffic ticket and that he had an illegal gun in his possession. Well, the officers stated reason for handcuffing him even under their version of events. At that point, he had done nothing beyond failing to produce his driver's license, correct? No. As he's getting out of the vehicle, one of the officers, Officer Marinas, saw a gun drop from his lap, basically, onto the seat and a handgun, and when the officer grabbed the handgun, he has a handgun that had been in his lap as he's driving. He maintains it was under the seat, didn't he? He did maintain that, and it was tried to a jury, and the jury ended up finding that he was lawfully arrested, and, of course, the presumption is that the jury finds in favor of the party whose facts support the verdict in all respects, which would mean that they necessarily found that he was driving without a driver's license, also not driving on a traffic ticket, and also that he had the illegal gun in his possession before the car was searched, during which the cocaine was also found. I have one question, and then I'll let you alone for a minute. Is your claim that damages under Section 1983 are never available, so long as there's probable cause, however unlawfully obtained? I'm not sure exactly what the question is. In this case, Mr. Martin was lawfully arrested, meaning that when he was placed in detention, the detention was entirely lawful. The officers had found the contraband, the handgun and the cocaine. He was incarcerated. There's no question but that the government had the right to detain him for the entire period of 65 days that he was detained and, during that period, to investigate to see whether or not they could find independent evidence of the existence of that handgun. The reason why I say that is the exclusionary rule would, in his criminal case, have prevented the prosecution from introducing, in his criminal case, evidence that the officers had found the handgun and the cocaine. But neither the exclusionary rule nor the Fourth Amendment prevented the government from detaining him pending trial. The critical moment would have been at trial, at which the prosecution would not have been able to present that evidence. But while they're detaining him, nothing prevented them from investigating to see whether they could find independent evidence, such as a person who contacts them or they're able to learn about who would say, well, I know that he had the handgun and the cocaine in his car because I saw him get in the car with the handgun. So he was detained entirely lawfully. And that, of course, is what he's trying to seek compensation for, the period of his detention. But because he was detained lawfully, that wasn't an injury under the Constitution or under any other federal law of which we are aware. And because it wasn't an injury, he can't get compensation for it. And we think that the case is as simple as that. And so you never reach the question of proximate cause, which is his argument that the initial unlawful stop of his vehicle his argument is that the initial unlawful stop of his vehicle started everything in motion, and that he's entitled to any damages after that, including for the entire period he was detained, even though he was detained for those 65 days entirely lawfully. We say that the proximate cause certainly doesn't reach that far. The jury was instructed that they could not award him damages for the 65 days while he was incarcerated. But the jury was instructed that if they found in favor of him on the unlawful vehicle stop, they could award him damages. They did award him damages. They awarded him $1 for that period. They didn't enhance that because they thought, well, maybe he was unjustly arrested, and for the subsequent period they awarded him $1 for that period. And consistent with the judge's instructions, did not award him any damages for the period that he was incarcerated until he was released after the suppression hearing in connection with his criminal case. If there are no other questions, then I would ask the court to affirm the judgment. Thank you, Counsel. Your Honor, as I said earlier, I think these issues are extensively brief, and I want to go into discussion of case law, which has already been done, actually, even to the extent of a sur-reply brief. And I was thinking about a sur-reply brief, but I decided against it. I think the issues are well-briefed and well-presented to the court, and we would urge you to follow the best decisions in Ronda, in Kerr or Carr, however it's pronounced, and in Train, and say that a jury can decide this issue on its own as to who is at fault and what the causation is and what damages are. Thank you. Thank you, Counsel. Thanks to both Counsel and the cases taken under advisement, The court will be in recess. Thank you.